PROWEST DIVERSIFIED,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–516C.

United States Court of Federal Claims.

May 13, 1998.

David A. Perkins, Perkins & Miltner, San Diego, CA, for plaintiff.

Andrea I. Kelly, Washington, DC, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Deputy Director Sharon Y. Eubanks, for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge.

Following this court's resolution of liability and damages in favor of plaintiff, defendant filed a motion for costs pursuant to Rule 68 of the United States Court of Federal Claims (RCFC). Plaintiff opposed the motion and, on February 18, 1997, filed an application for attorney fees and other expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1994). For the reasons discussed herein, the court denies defendant's motion for costs and partially grants plaintiff's EAJA application for fees in the amount of $50,205.16.[1]

## FACTS

The above-captioned case arose from contract number 50–9JHA–3–1F153, entered into by plaintiff and the Forest Service of the United States Department of Agriculture (USDA) in September 1993. Under the contract, plaintiff was required to perform con-

---

1. On November 19, 1997, the court issued an opinion denying defendant's motion for costs and partially granting plaintiff's EAJA application for fees. On May 13, 1998, the court vacated its November 19, 1997 opinion to correct a legal error therein.

struction work on the Eagle Lake Ranger Station project in Redding, California.

Plaintiff submitted a certified claim to the contracting officer on May 16, 1994, alleging that the default termination was improper and should be converted to a termination for convenience. The contracting officer failed to respond to plaintiff's claim within sixty days. On August 9, 1994, plaintiff filed a claim in this court seeking damages in the amount of $258,053. Plaintiff argued the termination was improper because: (1) plaintiff was not required to perform in the absence of a necessary change order; and (2) defendant did not consider any intervening factors that may have justified any delay in construction. Defendant asserted that the termination for default was justified as a result of plaintiff's alleged anticipatory repudiation of the contract. Defendant maintained that although the parties disagreed over the interpretation of the contract, plaintiff was still required to perform.

The court bifurcated trial into liability and damages phases. At the trial on liability, held on April 1–3, 1996, the court ruled in favor of plaintiff, holding that plaintiff was not in default and that defendant did not reasonably anticipate a failure by plaintiff to perform. The court also found that a change order was not required. Under the contract terms, therefore, the termination for default was converted to a termination for convenience.

On October 23, 1996, between the liability and damages phases of trial, defendant made an Offer of Judgment to plaintiff, pursuant to RCFC 68, in the amount of $58,000, with each party to bear its own costs.[2] Trial on damages was held November 4–6, 1996. On November 12, 1996, the court ordered a damages payment to plaintiff in the amount of $249.980. As defendant had already paid plaintiff $203,504 in progress payments, the court found that plaintiff was entitled to $46,-476 plus costs and interest. On December 20, 1996, defendant filed its motion for costs. Defendant claims it is entitled to its post-offer costs because the final amount of plaintiff's judgment (allegedly $46,476) was less than its offer of $58,000. On February 4.1997, plaintiff filed an opposition to the motion for costs and, on February 18, 1997, an EAJA application for attorney fees and other expenses.

## DISCUSSION

There are two issues before the court. First, whether the court, in comparing plaintiff's final judgment to the Rule 68 Offer of Judgment, should consider plaintiffs EAJA compensation. Second, whether, and to what extent, plaintiff is entitled to fees pursuant to its EAJA application.

### I. Defendant's Motion for Costs

In cases where a defendant has been found liable by order or judgment, but the amount of damages has not yet been determined, Rule 68 allows the defendant to make an offer of judgment not less than ten days before the damages phase begins. If this offer is rejected and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred" by the offeror after such offer was made. RCFC 68. The rule thereby provides an incentive for plaintiffs to settle a case when presented with an attractive offer, especially under circumstances "in which there is a strong probability that the plaintiff will obtain a judgment but the amount of recovery is uncertain." *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981).

■ Plaintiff denies that defendant's Offer of Judgment exceeds the judgment finally obtained, arguing that, when calculating a party's final judgment, the court should include any pre-offer costs to which the party is entitled pursuant to the EAJA.[3] Defendant responds that inclusion of pre-offer EAJA fees and expenses would be contrary to RCFC 68's underlying policy to encourage early settlement and discourage protracted litigation. Defendant also claims that plain-

---

2. This offer followed the liability phase of trial, and preceded the damages phase by ten days.

3. Thus, plaintiff contends that defendant's motion for costs is untimely and asks the court to withhold decision on this motion until the EAJA application is considered.

tiff has failed to demonstrate that its attorney fees qualify as "costs" within the meaning of Rule 68. For the following reasons, this court concludes that pre-offer fees, properly awardable to plaintiff pursuant to its EAJA application, will be included in determining whether the judgment finally obtained exceeds defendant's Offer of Judgment.

First, the court finds that the inclusion of pre-offer costs does not run counter to the purpose of Rule 68. In *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), the Supreme Court, while clearly rejecting the inclusion of post-offer costs in the Rule 68 comparison, indicated that pre-offer costs are properly added. The Court stated that:

At the time an offer is made, the plaintiff knows the amount in damages caused by the challenged conduct. The plaintiff also knows, or can ascertain, the costs then accrued. A reasonable determination whether to accept the offer can be made by simply adding these two figures and comparing the sum to the amount offered.... [P]ostoffer costs merely offset part of the expense of continuing the litigation to trial, and should not be included in the calculus.

*Id.* at 7, 105 S.Ct. at 3015–16; *Accord Grosvenor v. Brienen,* 801 F.2d 944, 948 (7th Cir.1986) ("[T]he amount of fees allowed the plaintiff for pre-offer legal services is relevant to the determination whether Rule 68 applies in a particular case.").

Second, as defendant correctly points out, the purpose of RCFC 68 is to cause "both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon the trial on the merits." *Marek,* 473 U.S. at 5, 105 S.Ct. at 3014. It appears that plaintiff evaluated its costs and potential gains before rejecting defendant's offer. Defendant made an offer after plaintiff had prevailed on the entitlement phase of the litigation. That offer was for $58,000 with each party to bear their own costs. For plaintiff not to consider recoverable costs in evaluating the $58,000 offer, as defendant seems to advocate, plaintiff would have to ignore the likelihood of

obtaining a favorable award pursuant to its success in the liability phase of trial and of recovering at least some of its costs pursuant to the EAJA. *See Weaver–Bailey Contractors, Inc. v. United States,* 24 Cl.Ct. 576 (1991) (holding that a plaintiffs success on the merits of a case creates a prima facie entitlement to attorney fees, thereby shifting the burden to the defendant to prove substantial justification); *see also United States v. 313.34 Acres of Land,* 897 F.2d 1473 (9th Cir.1989) (holding that the EAJA creates a rebuttable presumption that fees shall be awarded to a prevailing party in litigation against the government).

Third, defendant's argument that plaintiff has failed to demonstrate that its attorney fees qualify as "costs" within the meaning of Rule 68 is misguided. Whether attorney fees qualify as "costs" under Rule 68 is not relevant to whether pre-offer attorney fees, awardable under the EAJA, may be included in the court's Rule 68 comparison. Rule 68 provides that "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the [post-offer] costs incurred" by the offeror. RCFC 68. Thus, "costs" within the meaning of Rule 68, are those expenses that may be shifted from the offeror to the offeree upon a determination that the judgment finally obtained was not more favorable than the offer. In *Marek v. Chesny,* 473 U.S. at 9, 105 S.Ct. at 3016–17, the Supreme Court ruled that costs that can be shifted include attorney fees when such fees are defined as costs under the relevant substantive statute. Here, the court is called upon to determine whether pre-offer attorney fees, awardable under the EAJA, may be considered in the threshold determination of whether the offer of judgment was more favorable than the judgment finally obtained.

In *Marryshow v. Flynn,* 986 F.2d 689 (4th Cir.1993), the Fourth Circuit considered what costs are part of the "judgment finally obtained." The court found:

Rule 68 requires that a comparison be made between an offer of judgment that includes "costs then accrued" and the "judgment finally obtained." It is neither logical nor consistent with the rule and

applicable authority to compare an offer of judgment which includes all costs, including attorney's fees, and a judgment finally obtained which includes no costs. To make a proper comparison between the offer of judgment and the judgment obtained when determining, for Rule 68 purposes, which is the more favorable, like "judgments" must be evaluated. Because the offer includes costs then accrued, to determine whether the judgment obtained is "more favorable," as the rule requires, the judgment must be defined on the same basis—verdict plus costs incurred as of the time of the offer of judgment.

*Marryshow*, 986 F.2d at 692; *see Sheppard v. Riverview Nursing Center, Inc.*, 88 F.3d 1332, 1337 n. 4 (4th Cir.1996); *see also Marek v. Chesny*, 473 U.S. at 7, 105 S.Ct. at 3015 (plaintiff can evaluate defendant's offer of judgment by adding damages caused by the challenged conduct and "costs then accrued" and comparing that sum to the offer of judgment).

In this case, defendant's settlement offer was for $58,000 with each party to bear its own costs, attorney fees, and expenses. Following trial on damages, plaintiff was awarded $46,476 in damages plus costs and interest. If the court were to accept defendant's position and exclude recoverable pre-offer attorney fees from the Rule 68 comparison, plaintiff, and those similarly situated, would face a Hobbesian choice—accept defendant's settlement offer, despite the fact that it does not adequately compensate for recoverable pre-offer costs and attorney fees, or reject the offer and risk an adverse Rule 68 judgment.[4] This would clearly be contrary to the purpose of Rule 68. *Marek*, 473 U.S. at 5, 105 S.Ct. at 3014 (purpose of Rule 68 is to cause "both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon the trial on the merits"). The court concurs with the reasoning of *Marryshow*. Rule 68

requires a comparison of like "judgments." Where an Offer of Judgment includes costs and fees, recoverable costs and fees must be considered within the scope of the Rule 68 comparison. The court must next determine what, if any, fees and costs plaintiff is entitled to recover pursuant to the EAJA.

## II. Plaintiff's EAJA Application

### A. Whether Defendant's Position Was Substantially Justified

Section 2412(b) of the EAJA specifies that a court shall award fees and expenses to a prevailing party in litigation against the government "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(b) (1994). The court's decision must be based solely on the existing record. *Gavette v. OPM*, 808 F.2d 1456, 1467 (Fed. Cir.1986) (en banc). The government carries the burden of demonstrating the substantial justification of its position. *Id.* at 1465–66.

As required by the Act, plaintiffs application asserts that defendant's position was not substantially justified, and alleges entitlement to $107,884.35 in fees and costs. Defendant disputes this application, asserting that its position was substantially justified under the circumstances. Given the record before it, this court finds no substantial justification for defendant's position with respect to either the contracting agency's original conduct or defendant's position taken during the litigation of the parties' liability. Moreover, even if the court were to find substantial justification for defendant's stance during the damages phase of litigation, the court finds that defendant's earlier conduct was so unreasonable that it would be inequitable to deny fees on the basis of such conduct.

The Supreme Court stated that the term "substantially justified" means "justified to a degree that could satisfy a reasonable per-

---

4. For example, D makes a Rule 68 Offer of Judgment of $60,000, with each party to bear its own costs, attorney fees, and expenses. At the time of D's offer, P estimates that at trial P would recover damages of $50,000 and attorney fees and expenses under the EAJA, of which $30,000 were incurred prior to the Rule 68 Offer. To

accept D's offer, P must accept $20,000 less than it estimates it could recover. If P rejects the offer, and is awarded damages of $50,000 and EAJA attorney fees and expenses of $30,000, under defendant's theory, P would have to pay D's post-offer costs under Rule 68.

son." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). According to the EAJA, the "position of the United States" means the position taken by the United States in the civil action, and the original act or omission by the federal agency giving rise to the civil action. 28 U.S.C. § 2412(d)(2)(D) (1994); *see also Chiu v. United States,* 17 Cl.Ct. 334 (1989) (finding that, even if the Government's position during the civil action were justified, such justification could not outweigh the overall lack of substantial justification for the agency's original action).

Defendant contends that plaintiffs failure to give adequate assurances constituted an anticipatory repudiation of the contract that substantially justified the termination for default.[5] Defendant cites *National Movers Co. v. United States,* 181 Ct.Cl. 419, 386 F.2d 999 (1967), for the proposition that a contractor's oral statements that it would not perform justifies the anticipatory repudiation of a contract by the government. The facts of the present case, however, significantly differ from those of *National Movers.* In *National Movers,* the Court of Claims found that a contractor's refusal to perform a contract constituted a breach, thereby justifying the termination action by the Contracting Officer. However, the contractor had yet to begin performance and, from the time of the contract's award, consistently represented that it would not perform. Moreover, the Contracting Officer's termination action came only three days after the contractor won the contract.

In the present case, the contractor had already performed a substantial portion of the contract and defendant's termination interrupted that performance in midstream. At trial on April 3, 1996, the court found no reasonable basis for this interruption. Plaintiff had not demonstrated a clear, definite,

and unequivocal intent to cease performance, nor could plaintiffs actions be reasonably interpreted as such. On the contrary, it was inherently unreasonable for defendant to believe that plaintiff had, in fact, repudiated the contract. Thus, defendant fails to carry its burden of proving substantial justification for its position.[6] *Gavette,* 808 F.2d at 1467.

## B. Whether Plaintiff's Fees and Expenses Are Compensable Under the EAJA

Given defendant's lack of substantial justification for its "position," the court next must determine the amount of fees defendant owes plaintiff. Pursuant to the EAJA, the court "may award reasonable fees and expenses of attorneys ... to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(b) (1994). Thus, the overarching issue is the extent to which plaintiff's fees and expenses are reasonable.

Defendant challenges plaintiff's attorney fees on several bases. First, defendant argues that plaintiff lacks contemporaneous documentation for all of plaintiff's counsel's services rendered. Alternatively, defendant states that plaintiffs fees should be reduced because plaintiff's itemization mistakenly includes: (1) attorney fees incurred prior to filing the complaint; (2) the costs of dealing with a surety; (3) accountant fees incurred by Pacific Cascade, rather than Prowest Diversified; and (4) insufficiently detailed accountant fee records. Defendant further disputes plaintiff's assertion of entitlement to a heightened hourly fee. Finally, defendant argues that plaintiff may only claim a prorata share of attorney fees incurred for assembling plaintiff's EAJA application. The court will discuss both parties' arguments as to the reasonableness of plaintiff's claimed fees and expenses below.

---

**5.** The court previously refuted this argument in its bench ruling during the liability phase of trial on April 3, 1996. (Liability Phase Trial, Apr. 3, 1996, Tr. at 407–08.) Nevertheless, the court will address this argument again to show defendant's lack of substantial justification.

**6.** Defendant also contends that the Disputes clause imposed a duty on plaintiff to proceed with its performance and that its failure to do so

was substantial justification for repudiating the contract. The court finds this argument irrelevant and unpersuasive. As noted above, the court's findings of fact expose defendant's lack of justification for terminating the contract due to plaintiff's failure to return to work on December 17, 1993. The disputes clause cannot impute substantial justification on defendant's overwhelmingly unjustified acts.

### 1. Sufficiency of Plaintiff's Counsel's Documentation

 The EAJA requires plaintiff to provide the court with an application specifying "the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B) (1994). Furthermore, "under EAJA contemporaneous records of attorney's time and usual billing rates, as well as a breakdown of expenses are necessary in order to determine the reasonableness of charges." *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed.Cir. 1987). In the present case, plaintiff appended an itemization of plaintiff's counsel's services rendered to its EAJA application. Plaintiff claims that it utilized 453.2 hours in attorney fees, expended $15,447 in expert or consultant fees, and incurred $1,797.35 in other expenses, to pursue its claims against the United States. The itemization lists plaintiff's specific tasks in chronological order and includes a description of the service, the amount of time spent performing it, the hourly fee charged, and the total amount charged per task. The printout is dated February 15, 1997, although the itemized services were performed between May 5, 1994, and February 12, 1997. Plaintiff explains that the billing summary is dated February 15, 1997, because this was the date plaintiff's counsel, David A. Perkins, printed out a complete billing statement for plaintiff. Plaintiff stated that interim billing statements had been issued and were paid, excepting the last few billing statements.

 First, defendant argues the itemization is not contemporaneous because plaintiff has not provided "attorney time sheets." In response, plaintiff presents Perkins' declaration that he entered the billing information directly onto a computer program, which generates billing statements to clients. As a result, Perkins does not use attorney time sheets. Thus, plaintiff represents that each item on the itemization is a contemporaneous entry by either Perkins or his staff.

The court finds that plaintiff's counsel's failure to keep time sheets does not make counsel's billing records per se non-contemporaneous. To deem Perkins's computer records non-contemporaneous, by sheer virtue of the absence of a time sheet on paper, would be tantamount to denying technology a place in record-keeping. It is commonplace for attorneys to use computers for billing records, and although many attorneys still keep time sheets, the court sees no legitimate reason to require the use of a paper record over a computer-generated record.

 Second, defendant argues that plaintiffs counsel's records are not contemporaneous because the only proof of plaintiffs counsel's billing records was the itemization dated February 15, 1997. Although plaintiff stated that counsel had sent interim billing statements, plaintiff did not append these interim billing statements to the EAJA application, filed February 18, 1997. Consequently, the court issued an order on August 19, 1997, permitting plaintiff to submit supplemental records, including plaintiffs counsel's interim billing statements, usual billing rates, the nature of the fee arrangement, and a record of who performed which service. Plaintiff subsequently filed plaintiff's counsel's monthly billing statements, which are dated between June 7, 1994, and April 16, 1997. As stated in *Scherr Constr. Co. v. United States*, 26 Cl.Ct. 248 (1992), the periodic nature of a billing statement does not "thwart the requirement that a statement of fees and expenses be contemporaneous with the work performed and costs incurred." *Id.* at 251. The *Scherr* court found that a monthly billing statement satisfied the EAJA requirement for contemporaneous records. *Id.* at 250–51. In accordance with *Scherr*, the court finds that plaintiff's monthly statements satisfy the requirement that counsel's record be kept in a contemporaneous fashion.

 Defendant, however, also questions whether plaintiff established its counsel's usual billing rate and the nature of its fee agreement. *See Naporano*, 825 F.2d at 404. Plaintiff's itemization specifies that the "ATTORNEY FEE PER HOUR [is] $200.00." (Pl.'s Appl. for Award of Fees & Other Expenses Pursuant to Provisions of Equal Ac-

cess to Justice Act.) However, pursuant to the court's order of August 19, 1997, plaintiff submitted another declaration by Perkins, filed by leave of the judge on September 2, 1997. Perkins explained that he has worked for plaintiff since 1987 and has handled over twenty-five litigation matters for plaintiff. Perkins never had a written fee arrangement with plaintiff,[7] but declares that pursuant to the oral agreement, he agreed to be paid $130 per hour for services rendered, with an additional $70 per hour to be paid if plaintiff ultimately prevailed. Thus, because plaintiff prevailed, Perkins's rate was $200 per hour. His usual billing rate varied due to the "difficult business climate in California." He asserts, however, that his rate generally fluctuated between $150 and $200 per hour. The court finds plaintiff's counsel's explanation of the fee arrangement and usual billing rates sufficient for the court to determine whether counsel's charges are reasonable. Thus, the court finds plaintiff's counsel's documentation of attorney fees sufficient in light of the EAJA requirements. The court must next evaluate whether plaintiff's itemized fees and expenses are reasonable.

## 2. Reasonableness of Fees and Expenses

### a. Pre–Complaint Attorney fees

█ Plaintiff's counsel's itemization lists 70.6 hours spent between May 5, 1994 and the filing of the complaint on August 9, 1994. Defendant argues that plaintiff's expenses incurred prior to filing its complaint are not recoverable to the extent that the hours were not spent drafting and filing the complaint. Plaintiff argues that it incurred these attorney fees in order to understand the facts of the case, analyze the termination for default, and prepare the pleadings. Further, plaintiff asserts these tasks needed to be performed, irrespective of when they occurred.

The court finds that many of the services rendered prior to filing the complaint are not compensable. In *Levernier Constr., Inc. v. United States,* 947 F.2d 497 (Fed.Cir.1991), the United States Court of Appeals for the Federal Circuit held that, of the fees in-

curred by a prevailing party prior to filing the complaint, recovery under the EAJA is "narrowly limited only to 'fees for legal and factual research preparatory to Claims court litigation.'" *Id.* at 501 (citing *Cox Constr. Co. v. United States,* 17 Cl.Ct. 29, 33–34 (1989)). More specifically, the court held that, "at its earliest, EAJA coverage may begin after the decision of and in pursuit of an appeal from the decision of a contracting officer." *Levernier,* at 502.

In the present case, plaintiff submitted a certified claim to the contracting officer on or around May 16, 1994, arguing that the termination for default should be converted to a termination for convenience. The contracting officer failed to respond to the claim within the 60 day-period prescribed in the Contracts Disputes Act. 41 U.S.C. § 605(c) (1994). In light of this failure to respond, plaintiff interpreted the contracting officer's inaction as a denial of its certified claim pursuant to 41 U.S.C. § 605(c)(5) (1994). Thus, plaintiff could not have pursued an appeal of the contracting officer's "decision" until July 15, 1994. Thereafter, plaintiff legitimately interpreted the lack of response as a denial of the claim, and could direct counsel's subsequent activities toward mounting an appeal of the decision. Only attorney fees incurred after July 15, 1994, are subject to EAJA coverage. Thus, none of plaintiff's counsel's services rendered prior to July 15, 1994, a total of 50.2 hours, are recoverable pursuant to the EAJA. (*See* Appendix, Table I.)

### b. Fees Incurred for Dealings and Litigation with Plaintiff's Surety

█ Defendant argues that the attorney fees and accountant fees associated with litigation between plaintiff and its surety, ITT Hartford, are "outside the scope of this Court's purview" and therefore, are not subject to reimbursement under the EAJA. (Def.'s Resp. to Pl.'s App. for Att'y Fees & Expenses at 29.) Plaintiff counters that the interaction between plaintiff and Hartford

---

7. Plaintiff asserts that oral fee arrangements are ethically permissible under the California rules of professional responsibility. (Decl. of David A.

Perkins in Supp. of Pl.'s Appl. for Award of Fees and Other Expenses at 2.)

was caused by the termination for default and the litigation in this matter. As a result, plaintiff concludes the surety-related fees and expenses were necessary and proper within the context of this case.

In the present case, ITT Hartford issued a performance bond on the project at issue. After the USDA terminated the contract in December 1993, it requested that Hartford complete the project pursuant to the bond issued. Thereafter, plaintiff advised Hartford that the termination for default was improper, and accordingly, that Hartford should not honor the bond claim. In June 1994, USDA executed a Takeover Agreement with Hartford. Based on the Takeover Agreement, Hartford completed the project and incurred additional costs of approximately $180,000. Hartford demanded payment of said cost overruns against plaintiff and its principals. (Pl.'s Memo. of Contentions of Facts and Law at 2–3, 8.)

The court finds the fees and expenses for plaintiff's dealings with ITT Hartford to be outside the scope of the present litigation. In *Lemelson v. United States*, 8 Cl.Ct. 789 (1985), this court found that the "EAJA does not extend this court's power to include an award of fees as between private parties, especially since this court had no such power prior to the enactment of the EAJA." *Id.* at 792. The court further stated, "[i]t is clear that this court has never had jurisdiction to decide a controversy between private parties." *Id.* at 791 (citing *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Plaintiff and ITT Hartford are two such private parties. Any controversy between plaintiff and its surety is beyond the scope of this court's jurisdiction.

Even if plaintiff's interactions or litigation with a third party could somehow be reimbursed pursuant to the EAJA, it is clear that the relationship with ITT Hartford is outside the scope of the present action. Although plaintiff's litigation with Hartford began with defendant's termination for default, the surety relationship existed independent of the contract between plaintiff and defendant. Plaintiff states it encouraged Hartford to refrain from honoring the performance bond because it believed the termination for default was improper. Such interactions, however, were irrelevant to the issues before the court. The primary substantive issue underlying the present case was whether defendant's termination was for default or convenience. The issue of whether Hartford should have honored the performance bond is entirely irrelevant to the court's decision. Thus, the court holds plaintiff's fees and expenses incurred for its litigation with ITT Hartford are not recoverable under the EAJA. Of the 20.4 hours billed by Perkins prior to filing the complaint, the 12.5 hours attributable to the litigation with Hartford are not recoverable pursuant to the EAJA. The court finds the remaining 7.9 hours of plaintiff's counsel's billed time to be reasonable charges. Plaintiff is thus entitled to recovery for 7.9 hours billed to plaintiff for services rendered prior to filing the complaint.[8] (*See* Appendix, Table I.)

### c. Hours Billed by Plaintiff's Counsel After Filing the Complaint

Defendant does not challenge the hours billed by plaintiff's counsel between plaintiff's filing of the complaint on August 9, 1994, and plaintiff's work on the EAJA application, begun December 12, 1996.[9] Regardless, the court finds the 244.4 hours billed by plaintiff's counsel during this period reasonable, and therefore recoverable, under the EAJA. (*See* Appendix, Table I.) During the post-December 12, 1996, period, 80.6 hours were attributable to non-EAJA application issues, e.g., responding to defendant's motion for costs. Defendant also does not challenge plaintiff's claim for these services rendered. The court finds these 80.6 hours to be reasonable fees and therefore recoverable under the EAJA. *Id.* The extent to which hours spent assembling the EAJA application are reimbursable will be discussed below. *See infra* Section II.B.4.

---

8. Plaintiff's counsel did not bill plaintiff for surety litigation fees subsequent to filing the complaint.

9. As stated above, defendant challenged the sufficiency of plaintiff's counsel's documentation. The court found the documentation sufficient.

888

### d. Consultant/Expert Expenses

 Defendant argues that plaintiff cannot recover $15,447 in consultant fees for services provided by plaintiff's accountant. Plaintiff's accountant's billing statements evince services rendered to benefit plaintiff. However, the statements were not sent to plaintiff, Prowest Diversified; rather, the statements were sent to "Pacific Cascade." Defendant asserts that pursuant to the EAJA, only the "prevailing party" in a civil action against the United States can recover consultant expenses. The court agrees. Because the prevailing party, Prowest Diversified, did not incur the expenses, plaintiff cannot recover the consultant expenses under the EAJA.

The EAJA states that, "a court shall award to a *prevailing party* other than the United States fees and other expenses ... *incurred by that party* in any civil action." 28 U.S.C. § 2412(d)(1)(A) (1994) (emphasis added); *see also* 5 U.S.C. § 504(a)(1) (1994) (mandating recovery of fees and expenses "incurred by ... [a prevailing] party in an administrative adversary adjudication)." Thus far, plaintiff has presented proof only that its accounting expenses were incurred [10] by, and billed to, Pacific Cascade. Plaintiff cannot recover the costs of those services without proof of having incurred the expense. Furthermore, plaintiff makes no effort to deny that Pacific Cascade was sent the billing statements, and that Pacific Cascade incurred the accountant expenses. In light of plaintiff's virtual silence on the issue, the court finds no reason to believe plaintiff incurred any expense in relation to the accountant's fees. Thus, the court finds that plaintiff cannot recover the $15,447 in accountant expenses claimed in its EAJA application.[11] (*See* Appendix, Table I.)

### e. Other Expenses

Plaintiff also claims it incurred "other expenses," in the amount of $1,797.35,[12] necessary to prepare its case. These other expenses include: air courier or messenger services, photocopying, facsimile, computerized research assistance, trial exhibits, and office services. Defendant does not object to plaintiff's claim for these expenses. Upon analysis of these expenses, the court finds the expenses reasonable and recoverable pursuant to 28 U.S.C. § 2412(d)(1)(A). (*See* Appendix, Table I;) *Jean v. Nelson,* 863 F.2d 759, 777–78 (11th Cir.1988) (holding that "telephone, reasonable travel, postage, and computerized research expenses" are compensable under the EAJA), *aff'd,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

### 3. Hourly Rate

 The parties disagree as to the hourly rate that plaintiff is entitled to recover pursuant to the EAJA. The EAJA provides that "attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A) (1994).[13] Plaintiff asserts that it is entitled to an enhanced award of $200 per hour because it obtained "excellent results" and "exceptional success" in the present case. Plaintiff also argues for full compensation based on plaintiff's counsel's "expertise" with construction matters and

---

**10.** Black's Law Dictionary defines "incur" as follows:

> To have liabilities cast upon one by act or operation of law, as distinguished from contract, where the party acts affirmatively. To become liable or subject to, to bring down upon oneself, as to incur debt, danger, displeasure and penalty, and to become through one's own action liable or subject to.

Black's Law Dictionary 768 (6th ed.1990).

**11.** Defendant also argued that the description of the accountant's fees were not sufficiently detailed to support an award. Defendant's argument is moot in light of the court's holding that plaintiff never incurred the accountant expenses.

**12.** Plaintiff's other expenses have been adjusted because plaintiff already received partial payment through its bill of costs filed December 20, 1996.

**13.** The 1996 amendments to the Code raised the hourly attorney fee from $75 per hour to $125 per hour. 28 U.S.C.A. § 2412(d)(2)(A) (West Supp.1997). This amendment, however, applies only to civil actions commenced on or after March 29, 1996. Equal Access to Justice Act, Pub.L. No. 104–121, § 233, 110 Stat. 863, 864 (1996). The above-captioned case was initiated in 1994.

government contracts cases. Plaintiff alternatively requests an hourly rate of $129 per hour, which is the EAJA rate ($75) plus a cost of living adjustment. Defendant does not dispute the application of the $129 per hour rate, but opposes the enhanced hourly fee. The court finds application of a $129 per hour rate appropriate in the present case.

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court stated that, "[w]here a plaintiff obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.* at 435, 103 S.Ct. at 1940. Plaintiff argues that such "excellent results" were achieved in the present case because plaintiff succeeded on the liability issues, with an "overwhelming weight of evidence" in plaintiff's favor. Although it is true that defendant was not substantially justified in its position, plaintiff's mere success on the merits is insufficient for an enhanced award. Contrary to plaintiff's assertion, the court does not have considerable "discretion" in awarding an enhanced fee. In *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Court cautioned that exceptions to the EAJA cap on attorney fees "are not of broad and general application. . . . The 'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of counsel,' and *'the results obtained,'* . . . are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are." *Id.* at 573, 108 S.Ct. at 2554 (citation omitted) (emphasis added). In the present case, the court finds plaintiff's success unexceptional. To permit recovery of an enhanced award for such ordinary results would render the EAJA attorney fee cap meaningless.

The court further finds plaintiff's "expertise" with construction matters and government contracts cases an insufficient basis for an enhanced award. In *Pierce*, the Court stated that:

> [T]he exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed.

*Id.* at 572, 108 S.Ct. at 2554. The present case does not require any specialized knowledge or skill of the kind described in *Pierce*. *Id.* Plaintiff did not require the use of a patent lawyer or a lawyer versed in a foreign law, and plaintiff's counsel accordingly did not possess such specialized skills. Rather, plaintiff's case required only a level of general lawyerly knowledge and ability useful in all litigation. Thus, the court sees no justification for an hourly fee enhancement above the statutorily prescribed rate, plus the cost of living adjustment.

Therefore, the court denies plaintiff's request for an enhanced fee award of $200 per hour. Defendant does not oppose plaintiff's cost of living adjustment. The court finds the addition of the cost of living adjustment to the EAJA cap entirely appropriate, and therefore applies the $129 per hour rate.

## 4. Fees Incurred in Conjunction with Assembling the EAJA Application

The court finds the remaining 57.6 hours [14] spent assembling plaintiff's EAJA application to be reasonable expenses. Attorney fees incurred in assembling an EAJA application, however, are reimbursable to plaintiff only on a pro rata basis. *Skip Kirchdorfer, Inc. v. United States*, 16 Cl.Ct.

---

14. Although defendant asserts that plaintiff's counsel spent approximately 35 hours research-

ing and drafting the EAJA application, the court's analysis yielded a total of 57.6 hours.

27, 34 (1988). In the present case, plaintiff claimed a total of 395.6 hours of attorney fees (exclusive of fees for assembling the EAJA application), $15,447 in consultant fees, and $1,797.35 in other expenses. The court has found 62.7 hours of plaintiff's attorney fees, and $15,447 in accountant expenses outside the scope of EAJA coverage. Thus, plaintiff's recovery, excluding fees incurred to assemble the EAJA application, is $44,741.45. Plaintiff's total claimed EAJA fees and expenses (at the $129 per hour rate), excluding the fees for assembling the EAJA application, amount to $60,846.35. Thus, plaintiff recovered 73.5% of its fees claimed. Applying this success rate to the hours plaintiff's counsel spent on the EAJA application, plaintiff may recover $5,463.71 in attorney fees associated with filing the EAJA application. (*See* Appendix, Table II.).

The court orders plaintiff's recovery of $50,205.16 pursuant to the EAJA for reasonable fees and expenses incurred in its civil action against the United States. *Id.*

## III. RCFC 68 Comparison

As stated in Section I above, the court will take into consideration pre-offer attorney fees and costs awardable under the EAJA when ruling on defendant's motion for costs. Thus, the court must determine the amount of pre-offer attorney fees and costs to which plaintiff is entitled, and use this amount in the RCFC 68 comparison.

Defendant made its Offer of Judgment on October 23, 1996. Plaintiff's counsel reasonably billed 224.6 hours to plaintiff for services rendered prior to this date. At an hourly rate of $129, plaintiff's awardable pre-offer attorney fees amount to $28,973.40. Plaintiff's pre-offer costs amount to $1,734.35. Thus, the court finds that plaintiff incurred *pre-offer* EAJA fees and expenses in the amount of $30,707.75. Plaintiff obtained a judgment of $46,476 from the court during the quantum phase of trial in November 1996. Plaintiff's judgment in combination with its EAJA compensation amounts to $77,183.75, an amount well in excess of defendant's $58,000 offer of judgment. Thus, the court denies defendant's motion for costs. (*See* Appendix, Table III.)

## CONCLUSION

For the reasons set forth above, the court denies defendant's Motion for Costs. The court grants plaintiff's Application for Attorney Fees and Costs Pursuant to the EAJA and orders defendant to pay plaintiff $50,205.16. The Clerk of the court is directed in enter judgment accordingly.

**IT IS SO ORDERED.**

Appendix

### Table I: Plaintiff's Recovery of Fees & Expenses Under EAJA, Excluding Amounts Associated with Assembly of EAJA Application

| Item | Hours | Hourly Rate | Dollar Amount |
|---|---|---|---|
| Total hours billed by plaintiff's counsel pre-filing of complaint (5/4/94–8/9/94 ) | 70.6 | | |
| Disallowed hours between 5/4/94 and 7/15/94 | –50.2 | | |
| Disallowed hours spent on litigation with surety | –12.5 | | |
| Reimbursable hours pre-filing of complaint | 7.9 | | |
| Reimbursable hours after filing of complaint and before work began on EAJA application | 244.4 | | |
| Hours after work began on EAJA application, but not related to EAJA application | 80.6 | | |
| Total reimbursable attorney fees spent on EAJA application | 332.9 | $129 | $42,944.10 |
| Other Expenses | | | $1,797.35 |
| Plaintiff's Recovery without EAJA Application Fees & Expenses | | | $44,741.45 |

**Table II: Recoverable Fees and Expenses for Plaintiff's Assembly of EAJA Application and Total EAJA Recovery**

| Item | Hours | Hourly Rate | % Recoverable | Dollar Amount |
|---|---|---|---|---|
| Plaintiff's Claimed Fees & Expenses without EAJA Application Fees & Expenses (at hourly rate of 129 ) | | | | $60,846.35 |
| Plaintiff's Recovery without EAJA Application Fees & Expenses | | | | $44,741.45 |
| Percent of Plaintiff's Claimed Fees Recovered | | | 73.5% | |
| Total Claimed Charges for Assembling Plaintiff's EAJA Application | 57.6 | $129 | | $7,430.40 |
| Total Recoverable Fees for Assembly of EAJA Application | | | | $7,430.40 X .735 = $5,463.71 |
| Plaintiff's Recovery without EAJA Application Fees & Expenses | | | | $44,741.45 |
| Plaintiff's Total EAJA Recovery | | | | $50,205.16 |

**Table III: RCFC 68 Comparison**

| Item | Hours | Dollar Amount |
|---|---|---|
| Pre–Offer Attorney Fees at $129/hour | 224.6 | $28,973.40 |
| Pre–Offer Costs | | $1,734.35 |
| Pre–Offer Fees & Costs | | $30,707.75 |
| Judgment | | $46,476 |
| Judgment ± Pre–Offer Fees & Costs | | $77,183.75 |